116  926
p116 938

(41 South. 211.)

No. 15,674.

STOKER v. HODGE FENCE & LUMBER CO., Limited.

(March 12, 1906.    Rehearing Denied April 9, 1906.)

1. NEGLIGENCE—BILLS OF EXCEPTION—BILLS NOT WELL TAKEN.

The several bills of exceptions touching testimony on trial were reviewed. The grounds of objections afforded no good reason to set aside the decree and remand the case for another trial.

2. SAME—CHARGES AND COUNTERCHARGES.

Complaints are directed by plaintiff against defendant for bad management in its towing work just preceding the accident, which resulted in his fall and injury. Complaints are directed by defendant against plaintiff of gross negligence of duty just before the accident. After a review of the grounds of these complaints, it appears that the work of neither was model to be followed. The incidents at the time of the casualty were taken up and reviewed. The conclusion arrived at was that there was an open space in the bridge through which, under proper management, it would have been possible for the tug and the towed schooner to have passed.

3. SAME—DELAY.

Plaintiff did not delay in opening the draw of the bridge. Defendant's towing tug came to the bridge, and would have passed it with the schooner in tow if the usual channel had been followed.

4. SAME—IMPACT WAS AVOIDABLE.

The captain of the tug and other employés thereon knew, or must be held to have known, something about the channel. They should have directed all their attention to stay in the channel.

5. SAME—HALF OPENED BRIDGE.

The weight of the testimony does not sustain defendant's charge that the bridge keepers were closing, instead of opening, the bridge at the moment of the accident.

6. SAME—EVIDENCE.

A number of witnesses testified that the drawbridge was half open and there was space to pass. Others testified to the contrary. The district judge, who saw and heard the witnesses, substantially held that it was half open. After having reviewed the testimony, the court discovered no error in this respect.

7. DAMAGES—PERSONAL INJURIES.

In answering the decree, the plaintiff asked for an increase of damages. The court declines to increase the amount, and leaves it as found by the district judge.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by Robert W. Stoker against the Hodge Fence & Lumber Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

McCoy & Moss, for appellant. Gorham & Gorham, for appellee.

BREAUX, C. J. Plaintiff sues to recover damages for personal injuries. Plaintiff, with one John F. Spearing, was bridgekeeper of the Kansas City & Southern Pacific Railroad Company.

For brevity, we will refer to the Kansas City Railroad as the "K. C.," and to the Southern Pacific as the "S. P."

Each of these railroad companies own a bridge spanning the Calcasieu river near the city of Lake Charles.

To be specific as relates to the location, the bridge of the S. P. is nearer Lake Charles than is the bridge of the K. C. The distance between the two bridges is about 200 yards. They are strong railroad bridges; that of the K. C. being the heavier, and having a double gear. The S. P. bridge had a single gear and turned more easily. They are turning bridges, moved by a lever to give passage to boats and vessels. The arms of the lever are 12 feet in length.

Defendant's boat had to pass through the draw of the S. P. first, and afterwards through the draw of the K. C.

The stretch of the river on each side of the bridges is due north and south, and the bridges span this river east and west. It appears that the river is 600 feet wide at this place.

The draw of the K. C. bridge is 254 feet in length. The width of each draw between the center pier and the end of the draw is from 90 to 100 feet clear.

Plaintiff was one of the keepers of the K. C. bridge. He and his fellow employé (Spearing) had stepped out of the store in West Lake, and had walked a short distance, when they heard the signal of the tug to open the bridge. They ran to the bridge and applied themselves to open the draw. This happened in the daytime in January, 1904.

The contention here between the plaintiff and the defendant is, on the part of defendant, that plaintiff and his helper were slow. This is denied by plaintiff. Again, defendant urges that plaintiff had been notified to be prepared to open the bridge on his return in about two hours. Plaintiff's testimony does not fully agree with that of defendant in this respect.

According to the plaintiff and his assistant, they were reasonably near the bridge and did all that was necessary as bridge keepers.

It was also in evidence that there was a strong wind blowing from the south.

The defendant is the owner of the steam tug Mernan. He had undertaken to tow the large-size schooner Perkins, a three-mast schooner, up the Calcasieu river to a point above the K. C. bridge. This schooner meas--

ures in width 23 feet, length on keel 84 feet, and length over all 92 feet. The tug Mernan has a width of 14 feet and length of 30 or 40 feet, and is of about 12 horse power.

It was pulling a rope about 50 feet in length that was fastened to the schooner, which was not loaded.

The contention is, on the part of plaintiff, sustained by some evidence, that it would have been much safer to have lashed the tug alongside the schooner and not to have pulled it by a rope.

When the Mernan reached the bridge, the plaintiff and his assistant were pushing the lever and turning the pivot. The bow of the schooner collided with the east end of the draw, striking it about 10, or perhaps 20, feet from the extreme east end.

Immediately before the collision, the Perkins was steering for the east side of the draw or open space of the bridge. The tug was pulling to the west.

It was evident, a few moments before the casualty, that there was danger ahead. The tug turned back (tugs turn easily), and sought to assist the schooner. The attempt failed. The tug struck one of the piers. The schooner struck a heavy blow against the bridge, and was slightly damaged.

In the collision a log boat was turned over, and the movements show that the schooner and the tug must have been under pretty good headway. Plaintiff was one of the bridge tenders of the K. C. bridge. The blow of the schooner against the draw caused the lever to strike back, and strike both plaintiff and his assistant. Two of plaintiff's ribs were broken in the fall. His left lung was punctured. He was bruised and shattered, and suffered. He charges that his injuries were the direct result of the gross negligence of the Hodge Fence & Lumber Company, its agents and employés, and he, for these injuries, claims over $5,000.

The judgment of the district court allows him $1,000.

Defendant appeals.

We will in the first place apply ourselves to decide the questions arising on objections to evidence.

The first objection of defendant is that the plaintiff, a carpenter at one time, but not of late years, should not have sought to prove how much he had earned a day some six years ago as a carpenter.

The objection of defendant, overruled by the court, was that the evidence was irrelevant and immaterial. The evidence admitted shows that the witness had been working as a bridge tender for over six years, and that during that time he had not worked as a carpenter. It may have been the impression of the court a qua that it would be connected with other testimony, and we infer that it was.

But the court has some discretion regarding irrelevant testimony.

The error, if there was error, was not prejudicial, and affords no ground for complaint. Wigmore, Ev. § 15 et seq.

We think that it was admissible testimony.

The next objection raised by defendant was to evidence relating to the extent of injury to plaintiff's arms. The objection was that there was no allegation of injury contained in his petition. Allegations of injury were in general terms and broad enough to cover all injuries. Moreover, without regard to injuries to his arms, there were other injuries suffered by plaintiff to sustain the action.

The next objection was raised against the admissibility of evidence to prove the custom in towing schooners and barges through bridges. The contention was that there was no specific allegation upon the subject.

We are of opinion that it was inseparable from the issues presented. It was part of the substance of the case. It did not mislead the defendant or give the least occasion for surprise.

The text of Jones on Evidence (volume 3, verbo "Relevancy") has some bearing.

Another objection was raised on the ground that plaintiff did not have the right to prove the safest method of towing, as between towing by the line astern the tug and towing alongside by fastening the tug to the vessel.

The allegations were sufficiently broad to admit the testimony.

A witness was called for the purpose of impeaching the testimony of one of defendant's witnesses.

Defendant's objection was that plaintiff had made its (defendant's) witness his own, and that therefore he could not impeach his testimony. We have read the testimony admitted to impeach this testimony. It is neither positive nor direct. The statement of the witness sought to be impeached was not directly contradicted. If the testimony of the defendant's witness amounted to anything, it was not affected by the attempt made to impeach it.

We therefore pass to the merits.

The plaintiff charges that the employés of the defendant on the tug in question were not sufficiently attentive to the work intrusted to them, and were absent from their post of duty at a moment of danger; that they should have been present at all times.

Plaintiff's insistence is that by better management there would have been no casualty.

There was a strong gale blowing from the south, and the current was from the same direction, owing to the tide. In consequence, after passing the first bridge, the tug and the schooner were urged on with more than ordinary speed. The fireman on the tug had taken the place of the engineer, who had gone to his dinner.

Plaintiff says it was negligence on the part of the captain of the tug to have turned to the left, as the schooner's steersman was steering to the right and to the east for the opening of the span; that no orders were given to change its course and steer in the direction the tug was going.

Defendant seeks to retaliate, in answer to plaintiff's charges, by stating in substance that it was not its agents and employés who were at fault, but plaintiff and his assistant; that the bridge tenders were at a distance of over 1,000 feet; and that in consequence, after the signal was given by the coming tug, the bridge was not turned in time. It would be hard, in view of the facts, to hold that plaintiff was at fault because of the distance at which plaintiff and his helper Spearing were from the bridge at the time that the whistle of the tug was given, or, on the other hand, to hold that the defendant was at fault on account of the absence of the engineer, if he was absent as charged.

The plaintiff and his assistant, the testimony shows, ran to the bridge as fast as they could, and were at the bridge in time to commence turning it before the bridge keepers of the S. P. bridge had commenced to open the draw of that bridge.

Defendant, on the other hand, at the last moment did all he could to avoid the accident.

We leave this phase of the case.

This brings us to a consideration of the course followed by the tug with its tow just before entering the S. P. bridge. We shall follow the tug and its movements until it reached the K. C. bridge down to the moment of the accident.

On entering the draw of the S. P. bridge the pilot of the tug saw that the bridge of the K. C. was half opened, and as that was sufficient to enable him to pass he moved on with the schooner across the first bridge. There was a strong wind and a gentle current, we infer, as the tug was pulling north and upstream. The Calcasieu is a tidal stream, but the tide is not great, and the current of the water upstream is sluggish. With a strong wind and slow current, it does not seem to us that the rudder of the schooner was as useless as some of the witnesses will have it. She surely could steer toward the space in the bridge, and would have steered to it, as we understand, if his tug had not pulled in an opposite direction. Defendant's tug turned a few moments before

entering the draw. It is difficult to determine why the tug turned suddenly when about to enter the draw. The testimony is that the schooner had not been properly towed to that point, and the result was that it could not pass. Its prow was directed to the channel, while the tug was in another direction. The tug easily obeyed the rudders, and the schooner was equally as manageable. Why did they not unite in pulling to the space in the bridge?

It does not appear that anything prevented the tug from pulling the schooner to the right and to the open space from the time it left the S. P. bridge until it reached the K. C. bridge. Had she thus pulled, we infer that the schooner would have been towed to the open space, and it would in all probability, have escaped the collision. The weight of the testimony shows that, had the schooner followed the straight line to the opening of the K. C. bridge, it would have had ample space to pass. This space between the pier of the bridge and the end of the draw of the bridge, when in position in the bridge at rest, is between 90 and 100 feet. The schooner is 26 feet in width and the tug 14 feet. If the schooner had followed the tug in Indian file, no good reason suggests itself why they could not have passed and steered clear of the obstacles, as the draw was open to an angle of about 45 degrees—45 feet. At the last moment the tug added to the danger.

The evidence shows that under similar difficulties other schooners have avoided collision. No good reason suggests itself why the schooner could not have done likewise. The testimony does not lead us to infer that a safe passage through the bridge was impossible.

We annex hastily prepared diagrams.

P 1 represents the bridge as plaintiff claims it was at the moment of the accident. P 2 represents the bridge as defendant claims it was at the moment of the accident.

*PLAT N⁰ 1*

*PLAT N⁰ 2*

'A disinterested witness, who was near and saw the collision, says of the tug:

"If she would have kept on straight and turned east, she would have gone through."

This is corroborated by other testimony.

This witness was an officer on the boat Molineaux, which was following the schooner and the tug at a short distance.

Defendant cites the rivers and harbors act of August, 1894, especially that portion which requires tenders of drawbridges not to unreasonably delay the work in opening bridges after signal has been given.

In order that bridge tenders may be brought within the terms of the cited statute, it must be shown that there was unreasonable delay. Here we are not of opinion that there was such delay. The bridge was half open, and it afforded space sufficient to enable the watercrafts to pass. It was usual for vessels at this place to go through within the space before mentioned.

Defendant also takes the position that, the tug having given the signal required in due time to open the draw, and in view of the fact that the pilot of the tug could see the tender men at the draw, it was not negligence to continue approaching the draw, unless the bridge tenders signaled the boat to stop.

Defendant cites a number of decisions upon the subject, rendered in other jurisdictions. The decisions cited do not appear to fit the facts. Here the difference consists in that the vessels did not pass in the usual place.

Defendant further urges in this connection that the pilot of its tug, when it entered the river south of the S. P. bridge, saw that bridge draw open full width, and the K. C., 200 yards farther, had begun to swing open. This pilot knew from experience that they had time to open it before his boat could reach the bridge, and that without notice from the tender he was justified in proceeding as he did under slow bell.

True, plaintiff did not signal not to approach the bridge. Others had frequently passed.

Was it negligence for him to presume that defendant's schooner would also pass? He and his assistant could not well foresee that the tug would turn to the left, instead of to the right, and that the schooner, not sufficiently controlled, would strike the draw as before stated, thrust it out of its way, and continue upstream a half a mile before stopping.

Another insistence of defendant is that the crew of defendant's boat and the crew of the schooner unite in saying that the bridge was half open and still opening just as the tug pulled out of the draw of the S. P. bridge. But defendant charges that thereafter things changed, and that the bridge tender went to work reversing the movement and closing the bridge, so that the opening did not exceed 10 feet at the time that the tug reached the bridge and the collision took place.

Of course, if the bridge had been half open, and was afterward closed, in presence of the fact that the tug and schooner were coming, then there was nothing left for the tug's pilot to do except to look to doing all he could toward lessening the force of the impact between the schooner and the bridge. But we have considered all the evidence on the subject, and have not found unanimity of expression, even of defendant's witnesses upon the subject.

We have not found that the preponderance of the testimony sustains the serious charge. The weight of testimony is emphatic to the contrary. We have given special weight to unbiased and disinterested witnesses upon that question. We are forced to the conclusion that the draw was not closing at the time that the accident happened.

We will state, in concluding on this point, it appears to us that, in striking the bridge at an angle of about 45 degrees, and pushing or throwing it out of the way, as it is said was the effect of the impact between schooner and bridge, is already extraordinary enough; but if the bridge was nearly closed, as some of defendant's witnesses testify, it was wonder-

ful, particularly as it continued farther on about half a mile before it was stopped.

Now, as to the defense of the uncontrollable force of the gale, another issue: The district court declined to permit the defendant to amend its answer and allege that defendant's craft was uncontrollable because of strong wind and current; in other words, that the accident was caused by a vis major. This was a new issue. The case had been at issue for a considerable time when the amendment was offered, and the court decided that it came too late. It was a plea different from the pleas which had been previously interposed.

We think that it was properly excluded.

Subsequently, evidence of the wind's force was admitted. But it appears that it could have been controlled, and the evidence shows that the accident could have been averted. It appears to us that ordinary management would have been equal to the occasion.

Defendant charges that the conduct of plaintiff was not sufficiently prudent. Defendant urges that plaintiff should have foreseen the blow, and should either have raised the lever on its pivot, or should have hastily retreated from where he was at work when he saw the schooner turning. It does not appear that the lever could have been easily removed, nor that plaintiff had timely warning of any kind to retreat.

The plaintiff received injury for which he is entitled to recover. The judge of the district court fixed the amount of the damages at $1,000.

After having considered the facts and the circumstances of the case, we have come to the conclusion not to increase the amount. The wages he was receiving were not large.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.

---

(41 South. 215.)

No. 15,675.

## SPEARING v. HODGE FENCE & LUMBER CO., Limited.

(March 26, 1906. Rehearing Denied April 9, 1906.)

NEGLIGENCE—EVIDENCE.

    The facts and the law in this case are the same as those presented in the case of Stoker v. Same Defendant (recently decided) 41 South. 211, ante, p. 926.

    (Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by John F. Spearing against the Hodge Fence & Lumber Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

McCoy & Moss, for appellant. Gorham & Gorham, for appellee.

BREAUX, C. J. The views expressed in Stoker v. Hodge Fence & Lumber Company, Limited (La.) 41 South. 211,[1] having been reconsidered, the conclusion arrived at is the same as in the cited case, except as to the amount of damages, which is less by reason of the fact that plaintiff in this case did not suffer injuries to the extent found that plaintiff had suffered in the cited case.

For these reasons, the law and the evidence being in favor of the plaintiff, the judgment of the lower court is affirmed.

---

(41 South. 215.)

No. 15,929.

## MACMURDO v. MASON.

(April 9, 1906. Rehearing Denied May 7, 1906.)

BROKERS—COMMISSION ON SALES—EVIDENCE.

    Involves only question of fact.

    (Syllabus by the Court.)

---

[1] Ante, p. 926.